BOWLING, BY LEMLEY, NEXT FRIEND *v.*
SPERRY, *d/b/a* SPERRY FORD SALES.

[No. 19,501. Filed September 10, 1962.]

*John C. Hagen,* of Ligonier, for appellant.

*Albert J. Kuster,* of Ligonier, for appellee.

MYERS, J.—This is an appeal from a judgment of the Noble Circuit Court in a civil action brought by appellant, Larry Bowling, by Norma Lemley as next friend, hereinafter referred to as Larry, against appellee, Max E. Sperry, d/b/a Sperry Ford Sales, to disaffirm and set aside a contract for the purchase of an automobile on the grounds of infancy.

Larry was a minor, sixteen years of age. On June 29, 1957, he purchased from appellee a 1947 Plymouth automobile for the sum of $140 cash. He paid $50 down on that day and returned July 1, 1957, to pay the balance of $90 and take possession of the car. Appellee delivered to him a certificate of title and a written receipt. This receipt stated that as of June 29, 1957, Max Sperry Ford Sales sold to Larry Bowling a 1947 Plymouth for the amount of $140, cash, paid in full.

Larry drove the car several times during the following week and discovered that the main bearing was burned out. He had the car brought back to appellee's place of business where he was informed that it would cost him from $45 to $95 to make repairs. He declined to pay this amount and left the car on appellee's lot. Subsequently, he mailed a letter to appellee to the effect that he disaffirmed the contract of purchase and demanded the return of his

money. Upon appellee's refusal to pay back the $140, this lawsuit followed.

Larry's complaint is based upon the fact that appellee sold him a car knowing that he was a minor; that he tendered back the car, rescinded the contract, and demanded the sum of $140. Appellee's answer was in two paragraphs, the first being in the nature of a general denial, pursuant to the provisions of Supreme Court Rule 1-3, and the second being an allegation that Larry was accompanied by his grandmother and aunt at the time of the purchase, and that the aunt paid appellee the sum of $90 of the purchase price. Upon trial of the case by the court, judgment was rendered in favor of appellee and against Larry.

It has been the rule in Indiana for many years that the contracts of minors are voidable and may be disaffirmed. It is not necessary that the other party be placed in *statu quo,* nor is it necessary that the minor tender back the money or property he has received before suing for the value or possession of the money or property given by him to the adult. All such voidable contracts by a minor in regard to personal property may be avoided at any time during his minority or upon his arrival at full age. *Shipley* v. *Smith* (1904), 162 Ind. 526, 70 N. E. 803; *McKee* v. *Harwood Automotive Co.* (1932), 204 Ind. 233, 183 N. E. 646; *Wooldridge, by Next Friend,* v. *Hill* (1953), 124 Ind. App. 11, 114 N. E. 2d 646.

The evidence showed that Larry's grandmother and aunt accompanied him to appellee's used car lot on June 29, 1957, when he selected the automobile, and that his aunt drove the car around the lot at that time. Furthermore, it was revealed that his aunt had loaned him $90 in order to make final payment on

the car and that he had commenced to pay this back at $10 a week thereafter.

These facts, however, do not change the general rule. In so far as the agreement and sale is concerned, there was sufficient evidence to show that it was made between appellee and Larry, and no one else. It is of no consequence that his aunt and grandmother accompanied him at the time of purchase; and the fact that his aunt made payment of the $90 balance due could have no effect upon Larry's right to take advantage of his minority in an action to recover such payment. *Story, etc., Piano Co.* v. *Davy* (1918), 68 Ind. App. 150, 119 N. E. 177. Appellee was fully aware of Larry's age when the sale was negotiated. The written receipt was in Larry's name alone. This contract was squarely between an adult and a minor and falls within the rule pronounced above. Larry had every right to disaffirm it and set it aside.

Appellee claims there is doubt as to whether Larry received a certificate of title from appellee with his name on it. It is contended that the certificate was delivered in blank. As was said in the case of *Wooldridge, by Next Friend* v. *Hill, supra* (at page 14 of 124 Ind. App., at page 648 of 114 N. E. 2d) : "It is of little consequence whether title to the property involved had passed to the infant or not." The certificate of title is only evidence of ownership, and in this case it would make no difference whether Larry had received a certificate in blank or with his name on it. *Automobile Underwriters* v. *Tite* (1949), 119 Ind. App. 251, 85 N. E. 2d 365.

Appellee argues that an inference may be drawn from the evidence to show that the burned-out bearing

was caused by Larry's operation of the car and his failure to put oil in the crankcase. Even if this were true, it is no defense to this action. There is no requirement in Indiana that before a disaffirmance is effected the parties must be placed in *statu quo*. *Story, etc., Piano Co.* v. *Davy, supra.*

The question of whether or not the automobile was a necessary was injected into the trial of the case although appellee did not plead it as a defense. Some argument on this subject was made by the parties in the briefs. Section 58-102, Burns' Ind. Stat., 1961 Replacement, reads as follows:

> "Capacity to buy and sell is regulated by the general law concerning capacity to contract, and to transfer and acquire property.
>
> "Where necessaries are sold and delivered to an infant, or to a person who by reason of mental incapacity or drunkenness is incompetent to contract, he must pay a reasonable price therefor.
>
> "Necessaries in this section means goods suitable to the condition in life of such infant or other person, and to his actual requirements at the time of delivery."

In the case of *Price et al.* v. *Sanders et al.* (1878), 60 Ind. 310, 314, the following is stated:

> " 'Necessaries,' in the technical sense, mean such things as are necessary to the support, use or comfort of the person of the minor, as food, raiment, lodging, medical attendance, and such personal comforts as comport with his condition and circumstances in life, including a common school education; but it has been pithily and happily said, that necessaries do not include 'horses, saddles, bridles, liquors, pistols, powder, whips and fiddles.' "

Whether the goods are necessaries is a question of law, and if they are deemed as such, their quantity,

quality and reasonable value are matters of fact. *Garr et al.* v. *Haskett et al.* (1882), 86 Ind. 373.

It has been stated in 27 Am. Jur., Infants, §17, pp. 760, 761, as follows:

"Aside from such things as are obviously for maintenance of existence, what are or what are not necessaries for an infant depends on what is reasonably necessary for the proper and suitable maintenance of the infant in view of his social position and situation in life, the customs of the social circle in which he moves or is likely to move, and the fortune possessed by him and by his parents. It has been said that articles of mere luxury or adornment cannot be included, but that useful articles, although of an expensive and luxurious character, may be included if they are reasonable in view of the infant's circumstances. The necessities to be procured by the contract must be personal necessities, that is, for the living or personal well-being of the infant. . . .

"What is furnished to the infant must be suitable, not only to his condition in life, but also to his actual requirements at the time—in other words, the infant must not have at the time of delivery an adequate supply from other sources. To be liable for articles as necessaries, an infant must be in actual need of them, and obliged to procure them for himself."

The evidence revealed that at the time of this transaction, Larry was living with his grandmother in Cromwell, Indiana, where he had lived for the past fifteen years; that his mother was dead and his father resided in Fort Wayne; that he was a student at Cromwell High School, but was on vacation; that he had a summer job working at a restaurant in the town of Syracuse, Indiana, which was eight or nine miles away from his home; that his usual means of transportation back and forth was with the cook;

that on occasion he could "bum" rides with other people.

The acting manager for appellee, who had dealt with Larry, testified that when Larry's aunt and grandmother came to the sales lot on June 29, 1957, "they" said Larry needed something for him to get back and forth to work. He said it was his "understanding" that the car was needed for that purpose. Larry stated that during the short period of time he had possession of it, he only used it for pleasure, and did not drive it to work.

We are well aware of the overwhelming increase in the use and number of automobiles in this country since World War II. What once was a great luxury for only the wealthy has become a matter of common necessity for the ordinary workingman, farmer and businessman. The automobile is as important to the modern household as food, clothing and shelter. The problem here is whether the car in question was so needed by Larry, in view of his situation in life, his social status and his financial position, that he could not be maintained properly or suitably without it. The burden of showing this was upon appellee. *Robertson* v. *King* (1955), 225 Ark. 276, 280 S. W. 2d 402, 52 A. L. R. 2d 1108. From the evidence presented, we do not think appellee met this burden. While every high school boy today wants a car of his own, and many of them own automobiles which under given circumstances may be considered as necessaries, we do not consider the car in this case so vital to Larry's existence that it could be classified as a necessary.

Judgment reversed, and cause remanded with instructions that the trial court sustain appellant's

motion for a new trial on the ground that the judgment is contrary to law.

Cooper, P. J., and Ax and Ryan, JJ., concur.

NOTE.—Reported in 184 N. E. 2d 901.